UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYEDA F. LATEEF, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) 12 C 5611<br>) |
| PHARMAVITE LLC, OTSUKA, PHARMACEUTICAL CO., LTD. and OTSUKA AMERICA, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant Pharmavite, LLC's ("Pharmavite") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.

## BACKGROUND

Plaintiff Syeda F. Lateef ("Lateef") is a resident of Cook County, Illinois, and a practicing member of the Muslim faith. As a Muslim, Lateef adheres to certain dietary restrictions that prohibit her from eating certain animal-based food products, including pork and pork byproducts. Pharmavite is a Northridge, California-based limited liability company. It manufactures, markets, and sells nutritional supplements ("supplements") – letter vitamins, flax seed oil, and herbal supplements, for example

– under the Nature Made brand name. Lateef alleges that Nature Made supplements contain pork and other animal-based byproducts, that Nature Made labels failed to list these byproducts as an ingredient despite representations on the label and Pharmavite's website ("website") that Pharmavite is a trustworthy company, and that Lateef purchased a bottle of Nature Made supplements as a consequence of this alleged deception.

In March of 2012, Lateef purchased a bottle of Nature Made Vitamin D3 1000 IU Tablets ("Vitamin D") from a pharmacy retailer. Prior to purchasing the Vitamin D, Lateef read the list of ingredients on the product's label to ensure that the supplements did not contain pork byproducts. The label listed eight ingredients, none of which were included animal-based byproducts. Her decision to purchase the Vitamin D was based on the absence of any animal-based ingredients on the product label. The complaint maintains that the Vitamin D tablets were coated with gelatin. Gelatin is manufactured in part with extracts from animal byproducts: specifically from cattle, chicken, and pigs.

*Web-Based Marketing*

Lateef alleges that the website attempts to bolster Pharmavite's trustworthiness to consumers. She highlights several lengthy passages from the website that seek to accomplish this end. In relevant part, the website states:

- Nature Made, manufactured by Pharmavite, LLC, is one example of a brand that goes above and beyond to guarantee to consumers that what is on the label is in the bottle.

- We have been proud of our choices about our products, but in the past we have made many of these decisions with less explanation than our consumers and customers would like. We are making a commitment to change that. We are making a new commitment to you on the transparency and openness of our decisions, our actions, and the straight facts regarding the vitamin and supplement category as a whole.

- We know that the first key step is communicating more of our choices and actions regarding our products publicly, including potentially complex but important details of our products.

- We make sure consumers can trust what they're putting into their body.

- When ingredients arrive, they are tested for identity, and we continue verification at every stage of the manufacturing process to ensure we meet or exceed industry standards . . . .

Lateef filed this four-count putative class action lawsuit on behalf of herself and other Illinois residents who purchased Nature Made supplements. She claims that by failing to represent that the supplements contained an animal-based byproduct, Pharmavite is liable for three state law claims – (Count I) the Illinois Consumer Fraud and Deceptive Business Practices Fraud Act ("ICFA"), 815 ILCS 505/2; (Count II) breach of express warranty in violation of 810 ILCS 5/2-313; and (Count III) unjust enrichment – and one federal claim for violating the Magnuson-Moss Warranty Act, 15 U.S.C. § 203 *et seq.* Pharmavite now brings this motion to dismiss pursuant to Federal

Rule 12(b)(6). It contends that (1) Lateef's state law claims are preempted by federal law; and that (2) Lateef's federal law claim fails to state a claim on which relief can be granted.

## LEGAL STANDARD

**I.     Preemption**

Pharmavite urges the Court to assess its preemption argument under the legal standard that courts employ when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Federal preemption is an affirmative defense, upon which the defendant bears the burden of proof. *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). However, Lateef raises no procedural disagreement with Pharmavite's motion, and the basis of Pharmavite's preemption argument is easily divined from the face of the complaint. The Court therefore proceeds to the merits of the motion. *Kyriakoulis v. DuPage Health Ctr., Ltd.*, No. 10 C 7902, 2011 U.S. Dist. LEXIS 63905, at *3 (N.D. Ill. June 9, 2011) (*citing Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003)).

## DISCUSSION

**I.     Preemption of State Law Claims**

Pharmavite contends that the Federal Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-309, the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21

U.S.C. § 343, and corresponding federal regulations preempt each of Lateef's state law claims. Specifically, it argues that the claims should be dismissed because they seek to impose a duty to label going beyond what is required of it under federal law.

The Supremacy Clause of the Constitution empowers Congress to enact legislation that preempts state law. U.S. Const. Art. VI, cl. 2; *Chambers v. Osteonics Corp.*, 109 F.3d 1243, 1246 (7th Cir. 1997). The preemption doctrine can be triggered in three ways: through an express congressional statement defining the preemptive reach of a statute ("express preemption"), Congress's manifesting its intent to occupy an entire field of regulation ("field regulation"), or if it is either impossible to comply with both state and federal law or state law stands as an obstacle to the full accomplishment of Congressional objectives ("conflict preemption"). *Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (1996).

Pharmavite contends that the regulation of labeling supplements is exclusively a federal concern, that it complied with federal labeling requirements, and that Lateef's state law claims are preempted because they seek to impose a labeling obligation different from what is required under the federal regulatory scheme. To assess Pharmavite's argument, we first delineate the federal scheme that its motion relies upon. The FDCA regulates labeling and related claims with respect to food, drugs, cosmetics, and medical devices. 21 U.S.C. § 301 *et seq.* The NLEA is a 1990 amendment to the

- 5 -

FDCA that regulates nutrition content claims on food labels. 21 U.S.C. §§ 343(q), ®. The NLEA contains an express preemption provision designed to ensure uniform labeling of food products. Entitled "National uniform nutrition labeling," the statute prohibits states from imposing a labeling requirement to foods categorized under 21 U.S.C. §§ 343(c), (e), (i)(2), (w), and (x) if the state's requirement is "not identical to the requirement of" the NLEA. 21 U.S.C. § 343-1(a)(2). A state labeling requirement is "not identical to" an NLEA requirement if it imposes a labeling obligation that is inconsistent with the NLEA's requirements. *See* 21 C.F.R. § 100.1(c)(4). Nutritional supplements fall within the FDCA's definition of "food." *See* 21 U.S.C. § 321(ff). The statutory scheme thus unambiguously deems the regulation of the labeling of the supplements at issue an exclusively federal concern.

Pharmavite argues that the NLEA exempts it from listing gelatin as an ingredient on its labels. The NLEA exempts labeling of "incidental additives;" extracts from other food sources that contribute "no technical or functional effect," and are present in the labeled food at "insignificant levels." *See* 21 C.F.R. § 101.100. Further, if an ingredient contains two or more components, labeling the common name of the ingredient complies with the NLEA. 12 U.S.C. § 343(i)(2). Pharmavite asserts that it is exempted from listing on the label the presence of gelatin or animal-based byproducts

because it is present in a small amount, and it provides "no technical or functional effect" to the supplement.

Lateef agrees that her claims relating to Pharmavite's labeling are preempted, thus conceding that she cannot maintain a cause of action that would require Pharmavite to comply with a duty that s inconsistent with what the NLEA requires. She disclaims any desire to impose such a duty on Pharmavite to change any labeling requirement, despite the multitude of allegations in her complaint devoted to Pharmavite failing to list gelatin on its label. Lateef instead draws the Court's attention to her allegations pertaining to Pharmavite's web-based marketing campaign, insisting that she seeks only to enjoin Pharmavite "from falsely advertising that consumers can trust that [Pharmavite] identifies every ingredient on a Supplement's label."

Although the complaint contains several allegations relating to Pharmavite's web-based advertising, Lateef cannot save her state law claims. First, her ICFA claim relies entirely on Pharmavite selling Nature Made supplements "that contained pork or other animal byproducts but failed to disclose the same on the products' *label*." (emphasis added). This claim seeks to impose a duty that Lateef herself admits is preempted. Accordingly, the motion to dismiss Lateef's ICFA claim is granted.

Secondly, even if the Court were to rely only on her allegations relating to Pharmavite's web-based advertising, Lateef lacks standing to bring her state law claims

under Article III of the Constitution. The Court has a duty to evaluate a claimant's standing to bring a claim *sua sponte*. *See Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 744 (7th Cir. 2007). To establish standing, a plaintiff must demonstrate that (1) she suffered an injury in fact; (2) the injury is fairly traceable to defendant's challenged conduct; and (3) a court's favorable decision would redress the injury. *Bensman v. United States Forest Serv.*, 408 F.3d 945, 949 (7th Cir. 2005) (*citing Lujan*, 504 U.S. 555, 560-61 (1992)). To satisfy Article III's "traceability" prong, a plaintiff must establish "links in the chain of causation between the complained of injury and the challenged conduct." *Sanner v. Board of Trade*, 62 F.3d 918, 923 (7th Cir. 1995) (*quoting Allen v. Wright*, 468 U.S. 737, 759 (1984)).

The complaint alleges that Lateef purchased the bottle of supplements after reading the bottle's *label*. She makes no allegation that she visited the website, knew that it existed, or was aware of the statements on it. She thus fails to establish a causal link between her injury – ingesting animal and pork-byproducts – and Pharmavite's web-based marketing. Lateef therefore fails to establish Article III standing. Her state claims are dismissed.

**II.  Magnuson-Moss Warranty Act Claim**

Pharmavite argues in its motion that Lateef fails to state a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* In her response brief, Lateef

informs the Court that she no longer wishes to pursue her claim. Accordingly, Pharmavite's motion to dismiss is granted. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver).

## CONCLUSION

For the foregoing reasons, Pharmavite's motion to dismiss the complaint is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:   October 24, 2012