UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYEDA F. LATEEF, individually and On, Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 12 C 5611 |
| PHARMAVITE LLC, OTSUKA, PHARMACEUTICAL CO., LTD. and OTSUKA AMERICA, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant Pharmavite LLC's ("Pharmavite") motion to dismiss Plaintiff Syeda F. Lateef's ("Lateef") amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

### BACKGROUND

Lateef commenced this putative class action lawsuit on July 17, 2012. She sued Pharmavite, Otsuka Pharmaceutical Co., Ltd. ("OPC") and Otsuka America, Inc. ("OAI") for consumer fraud, breach of express warranty, unjust enrichment, and violation of the Magsuson-Moss Warranty Act. On September 4, 2012, Lateef stipulated to voluntarily dismissing OPC and OAI without prejudice, leaving Pharmavite as the only defendant in the suit. Pharmavite then moved to dismiss the

complaint, arguing that Lateef's state law claims were preempted by federal law and that Lateef waived her federal claim. We agreed and dismissed the complaint without prejudice in a memorandum opinion. *See Lateef v. Pharmavite LLC*, 12 C 5611, 2012 U.S. Dist. LEXIS 152528 (N.D. Ill. Oct. 24, 2012). Specifically, we held that Lateef's claims sought to impose a requirement on Pharmavite beyond what was required of it under federal law. *Id.* at *5-10. Lateef filed her first amended complaint ("amended complaint") on November 26, 2012 against Pharmavite, which Pharmavite now moves to dismiss. We recount the allegations contained in the amended complaint, which we are obligated to accept as true.

Lateef is a practicing member of the Muslim faith. Islam requires devotees to follow certain dietary restrictions which forbid the consumption of pork and animal-based products. Pharmavite is a California-based limited liability company which develops, manufactures, distributes and markets various nutritional supplements under the "Nature Made" brand name. According to the amended complaint, Pharmavite markets approximately 60 Nature Made supplements which are coated in a pork-based gelatin shell.

In March 2012, Lateef visited a retail pharmacy in Cook County, Illinois and purchased a bottle of Nature Made Vitamin D3 1000 IU Tablets ("Tablets"). Sometime

prior to the purchase, Lateef visited Pharmavite's Nature Made website ("website"), where she was exposed to the following statements:

- Nature Made, manufactured by Pharmavite LLC, is one example of a brand that goes above and beyond to guarantee to consumers that what is on the label is in the bottle.

- We make sure consumers can trust what they're putting into their body.

- For Nature Made as a vitamins and supplements company, we believe transparency means . . . Acting Openly & Honestly.

- Nature Made creates science-based, safe and effective products that meet consumers health and wellness needs.

- Pharmavite believes in empowering consumers to support healthy lifestyles.

- Throughout, we have been proud of our choices about our products, but in the past we have made many of these decisions with less explanation than our consumers and customers would like. We are making a commitment to change that.

- We are making a new commitment to you on the transparency and openness of our decisions, our actions, and the straight facts regarding the vitamin and supplement category as a whole.

- We know that the first key step is communicating more of our choices and actions regarding our products publicly, including potentially complex but important details of our products.

- When ingredients arrive, they are tested for identity, and we continue verification at every stage of the manufacturing process to ensure we meet or exceed industry standards.

- From ingredient sourcing, to state-of-the-art manufacturing practices we believe it is our responsibility to lead in delivering quality products and a quality consumer experience.

Lateef also visited the portion of the website featuring Vitamin D Tablets, which listed the supplement's ingredients. Gelatin was not listed as an ingredient. Lateef later discovered that the Tablets were coated in gelatin. She also alleges that the website states that its "Vitamin B-12 supplements are recommended . . . for vegetarians and vegans who avoid dietary sources rich in Vitamin B-12," even though they also allegedly contain gelatin.

Lateef claims that the representations made on Pharmavite's website led her to believe that the Tablets did not contain any pork-based ingredients. She further claims that she would not have purchased the Tablets if she had known that the Tablets contained gelatin since it is a sin to eat pork according to the Muslim faith.

Lateef brings this four-count amended complaint against Pharmavite on behalf of herself and a putative class of Illinois persons or entities similarly damaged by unknowingly consuming Nature Made supplements containing animal byproducts. She alleges that Pharmavite is liable under (Count I) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2; (Count II) Breach of Express Warranty; (Count III) Unjust Enrichment; and (Count IV) Attorneys' fees under the Common Benefit Doctrine. Lateef invokes the Court's jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Pharmavite now moves to dismiss the complaint under Rule 12(b)(6). It asserts that Lateef's ICFA and unjust

enrichment claims are preempted by federal law, and that Lateef fails to state a claim upon which relief may be granted. Because the entire amended complaint is capable of resolution on Pharmavite's Rule 12(b)(6) motion, we need not pass on Pharmavite's preemption arguments and proceed directly to the motion under Rule 12(b)(6).

## LEGAL STANDARD

In assessing a Rule 12(b)(6) motion to dismiss, the Court accepts all well pled facts as true and draws all permissible inferences in the plaintiff's favor. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations; she must only provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a claim must be facially plausible, a requirement that is satisfied if the pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

I.  **ICFA Claim**

Pharmavite contends that Lateef's ICFA claim fails because the allegedly deceptive statements on which the claim rest are not actionable. To state a claim under section 2 of the ICFA, a plaintiff must allege that the defendant "misrepresented a material fact in the conduct of a trade or commerce, with the intent that others would rely on such misrepresentation." *People ex rel. Madigan v. United Constr. of Am.*, 981 N.E.2d 404, 408 (Ill. App. Ct. 1st Dist. 2012) (quoting *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)). Omissions are also actionable under the ICFA if they are intended to induce the plaintiff's reliance. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 n.13 (7th Cir. 2012) (collecting cases). Materiality is judged under an objective standard. *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997). A representation of fact is material if a reasonable person could be expected to rely on a statement or omission in deciding to enter into a transaction. *Id.*

Pharmavite argues that Lateef's ICFA claim must fail because the statements on which she relies are statements of opinion, not fact. Even if the statements can be construed to be representations of fact, Pharmavite argues that no reasonable person

could infer that the statements conveyed that Nature Made supplements did not contain gelatin.

Pharmavite contends that the statements cited by Lateef are examples of mere "puffery": "exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). Puffery cannot serve as the basis of a claim under the ICFA. *Id.* Examples of puffery include "high-quality," "expert workmanship," "custom quality," "perfect," "magnificent," "comfortable," and "picture perfect." *Id.* (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846-47 (Ill. 2005)).

We agree with Pharmavite that the challenged statements are not actionable under the ICFA. The statements contain no assertions of fact as to a specific product or ingredient, and accordingly provide no basis by which a reasonable person would purchase Pharmavite's supplements. *Barbara's Sales*, 879 N.E.2d at 927. For example, the company's statements that expound its "commitment to . . . transparency," "supporting healthy lifestyles," belief in "empowering consumers to support healthy lifestyles," or communicating "important details of our products" do not come remotely contemplate the presence of gelatin. The statements are better characterized as general goals and platitudes that no reasonable person could infer the absence of gelatin from

Nature Made supplements. Furthermore, the statements provide no objective measure from which a reasonable person can gauge their truth or falsity. The ICFA does not contemplate a remedy against Pharmavite in the event that it was not sufficiently committed to transparency. Nor could Pharmavite be held liable if it was only ambivalent regarding its consumers' healthy lifestyles, or if it did not communicate its products' details thoroughly enough. Rather, these statements are akin to those cited by the Illinois Supreme Court as mere puffery, and cannot serve as the basis of Lateef's ICFA claim.

Lateef nevertheless urges that the statement, "Pharmavite . . . goes above and beyond to guarantee to consumers that what is on the label is on the bottle" can support her ICFA claim. However, the statement still falls short. First, as with the statements discussed in the previous paragraph, Pharmavite's "guarantee" makes no factual representation about a specific ingredient or product, and therefore fails to meet the objective standard for a misleading statement. Further, Lateef does not quarrel with the technical accuracy of the statement: if an ingredient is on the label, it can be found in the supplement. Lateef's claim that the statement is misleading must necessarily rest on the premise that the omission of gelatin on the label is misleading. But as we ruled in dismissing the original complaint, and as Lateef herself conceded in her brief opposing Pharmavite's first motion to dismiss, Pharmavite is under no duty to list

gelatin as an ingredient under the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 341 *et seq*. *See Lateef*, 2012 U.S. Dist. LEXIS 152528, at *8. Although the amended complaint couches Lateef's ICFA claims under the guise of a false advertising claim, a ruling in her favor would penalize Pharmavite for not labeling gelatin on its label. As we have already ruled, Pharmavite was under no duty to do so under governing federal regulations. *Id.*

Because none of the statements attributed to Pharmavite are actionable under the ICFA, Lateef's ICFA claim is dismissed.

## II. Breach of Express Warranty Claim

Pharmavite contends that Lateef fails to state a claim for breach of express warranty. To state a claim for breach of express warranty under Illinois law, "a plaintiff must show breach of an affirmation of fact or promise which was made part of the basis of the bargain." *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 4th Dist. 1989). No particular words are necessary to create an express warranty; however, "a positive assertion of fact by seller at the time of the sale for the purpose of assuring the buyer of said fact and thereby inducing him to make the purchase, constitutes an express warranty." *Coryell v. Lombard Lincoln-Mercury Merkur*, 544 N.E.2d 1154, 1158 (Ill. App. Ct. 2d Dist. 1989). Because express warranties are contractual in nature, "the language of the warranty itself controls and dictates the obligations and rights of

the various parties." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 1st Dist. 2007).

Lateef asserts that the following three statements on the website each constitute a "positive assertion of fact":

- Nature Made, manufactured by Pharmavite LLC, is one example of a brand that goes above and beyond to guarantee to consumers that what is on the label is in the bottle;

- We make sure consumers can trust what they're putting into their body; and

- Vitamin B-12 supplements are recommended . . . for vegetarians and vegans who avoid dietary sources rich in Vitamin B-12.

The latter two statements identified by Lateef are not actionable because they contain no assertion of fact concerning the presence or absence of gelatin in its dietary supplements. Nor may the first statement serve as the basis of a claim for breach of express warranty. While the statement purports to make a "guarantee," it makes no reference to either the presence or absence of gelatin in any of Pharmavite's products. Rather, the declaration merely directs interested consumers to the bottle. This lack of specificity falls short of creating the kind of contractual rights on which a breach of express warranty must be predicated. *Oggi Trattoria & Caffe, Ltd.*, 865 N.E.2d at 340. Therefore, Pharmavite's motion to dismiss the claim for breach of express warranty is granted.

## III. Unjust Enrichment and Common Benefit Doctrine Claims (Count III)

Pharmavite's unjust enrichment and Common Benefit Doctrine claims are also dismissed, since neither can be maintained independently of the ICFA or breach of express warranty claims.

## CONCLUSION

For the foregoing reasons, Pharmavite's motion to dismiss is granted. Furthermore, because Lateef's allegations and exhibits fail to support her claims, the dismissal is with prejudice. *See Ennenga v. Starns*, 677 F.3d 766, 781 (7th Cir. 2012).

Charles P. Kocoras
United States District Judge

Dated: April 10, 2013